This is an appeal from a judgment in favor of Plaintiff in a civil damage suit. We address each of three alleged evidentiary errors separately and set out the necessary facts in our discussion of each issue.
 I. Introduction of Evidence after the Completion of Closing Arguments
Appellant's/Defendant's first argument is that the trial court erred in allowing Plaintiff to introduce evidence after the evidence portion of the trial was closed. Defendant objected to Plaintiff's reference to a mortality table in his argument because, according to Defendant, the table had not been timely introduced into evidence. Plaintiff responded that the table had been introduced before trial resumed that morning in an in-chambers meeting between the judge and counsel representing both parties. The judge agreed with Plaintiff's perception of what had transpired *Page 126 
earlier. Nevertheless, at this time Plaintiff offered, and the Court admitted, the mortality table into evidence.
We find the following exchange in the record:
 "(Whereupon, the proceeding occurred on Friday, 5/15/84, at approximately 10:25 a.m., in the chambers of the Honorable Judge Price, outside of the presence of and hearing of the jury):
 "Mr. Hooper [Plaintiff's counsel]: What I want to do is introduce the mortality table. I think the Court knows the section . . . that says that these are admissible into evidence. And I want to introduce the mortality table into evidence.
 "Mr. Butler [Defendant's counsel]: The only objection we have to this is that I don't believe there has been evidence that the injury from this accident is of a permanent nature and I don't think the mortality table would apply unless there is testimony of permanent injury.
". . .
"The Court: Overruled. I will let them in.
 "(Whereupon, Plaintiff's Exhibit Number Three was marked for identification purposes and admitted.)"
We recognize that the judge's statement, "I will let them in," is subject to two interpretations. It could mean that the judge agreed to admit the mortality tables into evidence at some future time, presumably in open court. On the other hand, the judge's statement could be interpreted to mean that he admitted them into evidence at that moment, in which case his use of the word "will" would have been in its permissive sense, rather than in its time sense. We feel that he used the word "will" in a permissive sense, and that his usage of "will" did not refer to some future time. Indeed, this was the perception of everyone present at the in-chambers meeting (including the court reporter), except the Defendant's counsel. We find, therefore, that the mortality tables were introduced properly before the close of the evidence.
In reference to the introduction of the mortality tables, however, the Defendant further argues that it is error to introduce documentary evidence outside the presence of the jury. To be sure, with certain exceptions,[1] "[i]n all trials the testimony of witnesses shall be taken orally in open court." A.R.Civ.P. 43 (a). There is, however, no such explicit rule for the introduction of documentary evidence, and we see no reason why there should be.
Rule 43 (a) was enacted to correct the "abuses of taking testimony by deposition in the historic equity practice." 9 C. Wright A. Miller, Federal Practice and Procedure: Civil § 2407 (1971). To require that witnesses testify in open court prevents the court from receiving or considering "anything in confidence or secret from the parties or their Counsel" and permits "fair and complete examination and cross-examination." G. McLeod, Trial Practice and Procedure in Alabama 254 (1983).
Thus, the Rule 43 (a) directive that all witnesses' testimony is to be taken in open court is primarily to insure that the parties have notice of all proceedings. It only peripherally, if at all, concerns the fact that the jury is or is not present. Therefore, we hold that an in-chambers introduction of documentary evidence, with all parties' counsel present, does not violate the spirit of Rule 43 (a). Defendant's/Appellant's argument to this effect is without merit.
 II. Admission of Expert Testimony Based upon Learned Treatise
Defendant next argues that the trial court improperly allowed a physician to base his testimony upon excerpts from a medical treatise. In the instant case, Dr. Pelat, a family practitioner, supported parts of his testimony by citing a medical treatise *Page 127 
entitled Hollander's Arthritis and Allied Conditions.[2]
Admittedly, the treatise was never offered or introduced into evidence. Defendant argues that unless a medical treatise is introduced into evidence it cannot be the basis for an expert physician's testimony.
Alabama has a liberal learned treatise exception to the hearsay rule in that such treatises may actually be admitted into evidence during direct examination. See C. Gamble,McElroy's Alabama Evidence § 248.01 (3d ed. 1977). Defendant seems to argue that because Alabama goes further than most jurisdictions and allows the actual introduction into evidence of a learned treatise, the use of such treatises to any lesser degree, namely, as a foundation of the expert's testimony, is precluded. We fail to see the logic of, or the necessity for, such a rule. It was the doctor's expert opinion and not the learned treatise that was proffered into evidence.
Whether or not the treatise is introduced, the defendant still has the option and protection of using the treatise on cross-examination to impeach or discredit the expert's testimony.[3] Metropolitan Life Insurance Co. v. Nichols,393 So.2d 966, 968 (Ala. 1981). If he deems it tactically advantageous, the defendant may even introduce on cross-examination a treatise relied on by an expert and attempt to impeach or discredit its authoritativeness. With these protective options available to the Defendant, we do not see how he was in any way prejudiced by the nonintroduction of the learned treatise. He neither gained nor lost anything by his opponent's decision to use the treatise but not introduce it. Therefore, we find that, under the circumstances, the trial court did not commit reversible error by permitting the use of a nonintroduced learned treatise by an expert.
 III. Admission of Expert Witnesses' Opinions as to Ultimate Issue
Defendant's third assignment of error is that the trial judge allowed Plaintiff's expert witnesses to testify as to the ultimate issue of the case: whether Plaintiff's automobile accident caused his arthritic pain and disability. In Byars v.Mixon, 292 Ala. 661, 668, 299 So.2d 262, 268 (1974), we held that "[t]he fact that a question propounded to an expert witness will elicit an opinion from him in practical affirmation or disaffirmation of a material issue in a case will not suffice to render the question improper." See, also,Crawford Coal Co. v. Stephens, 382 So.2d 536 (Ala. 1980) (engineer-geologist's opinion that improper blasting techniques caused house damage); see, generally, McElroy's, supra, at § 127.01 (5) (stating that the modern trend is "in the direction of permitting experts to give their opinions upon ultimate issues whose final determination rests with the jury"). Therefore, we find no reversible error in the testimony of these experts that Plaintiff's automobile accident caused his pain and suffering.
We have carefully reviewed the other evidentiary issues presented and find they are without merit.
AFFIRMED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.
[1] See, e.g., A.R.Civ.P. 32 (depositions), and A.R.Civ.P. 44 (official records).
[2] The Plaintiff properly qualified the physician as an expert and properly authenticated the treatise.
[3] Indeed, in the instant case, the Defendant did question the expert on voir dire in reference to the authoritativeness of that part of his testimony based on the medical treatise. *Page 128